IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Civil No. 4:24-cv-091 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | VERIFIED COMPLAINT FOR |
| | ) | FORFEITURE IN REM |
| Approximately $123,880 in U.S. Currency, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, United States of America hereby files and serves this Verified Complaint in Rem and alleges as follows:

## I.   THE NATURE OF THE ACTION

1. This is an action to forfeit specific property (hereinafter referred to as the "Defendant Property") to the use and benefit of the United States of America for involvement, as set forth below, in violations of 21 U.S.C. § 846 (attempt and conspiracy), and § 841(a)(1) (prohibited acts).

2. The United States believes the Defendant Property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as money or a thing of value furnished or intended to be furnished by a person in exchange for a controlled substance, in violation of subchapter I, Chapter 13, Title 21, United States Code, as proceeds traceable to such an exchange, and as money used or intended to be used to facilitate any violation of said subchapter.

## II.   THE DEFENDANT IN REM

3. The Defendant Property is generally described as approximately $123,880 in U.S. currency seized on June 2, 2022, from the residence of Hector Soto Godinez (hereinafter "Soto") at the 3200 block of E. 12th Street, Des Moines, Iowa.

## III. JURISDICTION AND VENUE

4. This Court has jurisdiction over this case, pursuant to 28 U.S.C. § 1345 (United States as Plaintiff), as an action commenced by the United States of America, and pursuant to 28 U.S.C. § 1355(a) (Fine, penalty, or forfeiture), as an action for forfeiture.

5. This Court has in rem jurisdiction and venue over the Defendant Property under 28 U.S.C. §§ 1355(b) and 1395(b) because some of the acts or omissions giving rise to the forfeiture occurred in this District and because the Defendant Property was seized from and is located in this District.

## IV. FACTS

### Overview

6. The "Controlled Substances Act" was enacted by Congress as Title II of the "Comprehensive Drug Abuse Prevention and Control Act of 1970," Pub.L. No. 91-513, 84 Stat. 1236 (1970) (codified at 21 U.S.C. §§ 801-904).

7. The term "controlled substance" is defined in 21 U.S.C. § 802(6) to mean a drug or other substance, or immediate precursor, included in any of the five schedules of such substances set forth in subchapter I of Title 21, United States Code.

8. Schedule I substances have a high potential for abuse, have no currently accepted medical use in treatment in the United States, and there is a lack of accepted safety for use of these controlled substances under medical supervision. 21 U.S.C. § 812(b)(l)(A) - (C).

9. Marijuana is a Schedule I controlled substance.

10. Schedule II substances have a high potential for abuse, the controlled substances have a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions, but use of a Schedule II controlled substance may lead to severe psychological or physical dependence. 21 U.S.C. § 812(b)(2)(A)-(C).

11. Cocaine, oxycodone, fentanyl, and methamphetamine are Schedule II controlled substances.

12. Only persons registered by the Attorney General of the United States, in accordance with rules and regulations promulgated by the Attorney General, may legally manufacture or distribute controlled substances. 21 U.S.C. § 822(a), (b).

13. Under the Controlled Substances Act, it is unlawful to distribute, dispense, or possess with intent to distribute, a controlled substance, unless authorized by law to do so. 21 U.S.C. § 841(a)(l).

14. Under the Controlled Substances Act, it is unlawful to conspire with others to violate its prohibitions. 21 U.S.C. § 846.

15. Under the Controlled Substances Act, all moneys or things of value furnished or intended to be furnished by any person in an illegal exchange for a

controlled substance, all proceeds traceable to such an exchange, and all moneys used or intended to be used to facilitate a violation of Subchapter I of the Controlled Substances Act, are subject to forfeiture to the United States and no property right shall exist in such property.

### Characteristics of Drug Traffickers

16. It is common in the illegal drug trafficking trade in the United States for sellers and purchasers involved in such illegal transactions to conduct business in U.S. Currency rather than using traceable payment means, such as monetary instruments, electronic transfers, or credit cards, to avoid creating records of their activities that might be detected by law enforcement.

17. Illegal drug traffickers in the United States often store the proceeds from their drug deals in locations they consider safe, such as in their residence, a stash house, or the residence of a trusted family member, friend, or colleague.

18. Illegal drug traffickers in the United States often use digital scales to weigh their products before they package and distribute or sell them to customers because the sale price is often based on the quantity or weight of the controlled substances being illegally sold.

19. The United States believes that evidence will show after a reasonable opportunity for further investigation and discovery, that the Defendant Property constitutes the proceeds of one or more prohibited controlled substance offenses or was used or intended to be used to facilitate one or more prohibited controlled substance offense.

## Summary of the Investigation

20. Law enforcement in the greater Des Moines area opened an investigation in the Spring of 2022 into a drug trafficking organization illegally dealing methamphetamine, fentanyl, and cocaine.

21. In April and May 2022, law enforcement learned one of the members of this organization, Freddy Echeverria (hereinafter "Echeverria"), illegally sold counterfeit Oxycodone pills to customers in six transactions that, in total, contained more than 50 grams of fentanyl in total.

22. In May through June 2022, law enforcement learned that Soto, who was also a member of the organization, illegally sold one-ounce quantities of cocaine to customers on three occasions.

23. Surveillance showed Echeverria stopped at two storage units within the Des Moines metropolitan area before and after several of the drug transactions he conducted.

24. On June 2, 2022, law enforcement executed search warrants at the residences of Echeverria and Soto, and the two storage units.

25. Law enforcement found illegal drugs, drug paraphernalia, a Glock pistol, and cash during the search of Echeverria's residence.

26. When interviewed by law enforcement, after his *Miranda* warning was read, Echeverria voluntarily made statements about his drug trafficking, and admitted he picked up and dropped off drug proceeds to Soto.

27. Law enforcement searched Soto's residence at the 3200 block of E. 12th Street, Des Moines, Iowa.

28. Approximately seven people, including numerous minors, were located in the upstairs unit of the split-level residence in which Soto resided.

29. Soto and his girlfriend were present during execution of the search warrant.

30. Specifically, Soto and his girlfriend were in their bedroom in the residence when law enforcement arrived.

31. Inside Soto's bedroom, law enforcement officers located:

   (a) a small blue duffle bag containing approximately one kilogram of cocaine in clear plastic wrap;

   (b) a grocery sack containing 230 grams of cocaine, appearing to be a corner of a brick;

   (c) digital scales, including a digital scale with cocaine residue;

   (d) a fork to break off the cocaine;

   (e) 54 THC cartridges;

   (f) 32 grams of marijuana;

   (g) 12 Ziploc baggies with cocaine residue (matching baggies used in sales made by the drug trafficking organization);

   (h) $90,610 in an envelope near the kilo of cocaine;

   (i) a loose stack of $33,000 in cash, near the kilo of cocaine; and

   (j) $270 in Soto's wallet.

32. The quantity of cocaine seized is consistent with that of a distributor and is not a personal-use quantity.

33. Large amounts of cocaine are often distributed by suppliers to distributors in kilogram quantities, often wrapped in plastic.

34. Soto's possession of the Defendant Property in the same residence as a kilogram of cocaine, digital scales, and Ziploc baggies is evidence that he was selling and had sold large quantities of cocaine.

35. At approximately 6:45 a.m., law enforcement confirmed Soto spoke English and explained his *Miranda* rights, which Soto originally invoked.

36. At approximately 9:20 a.m., Soto asked to speak to law enforcement and was reinformed of his *Miranda* rights, which he knowingly and voluntarily waived.

37. At the time, Soto also signed a *Miranda* waiver form.

38. Soto was, thereafter, interviewed by law enforcement officers.

39. During the interview, Soto admitted the following:

    (a) he used marijuana regularly and used cocaine;

    (b) he sold cocaine, typically at $800-$1,000 per ounce;

    (c) he had approximately ten (10) customers in Des Moines;

    (d) a kilogram of cocaine cost approximately $30,000;

    (e) he knew almost exactly the amount of cash that was at his house, establishing his involvement with it, and said he collected it from 2-3 people, including Echeverria;

    (f) he possessed approximately three (3) kilograms of cocaine just a few days prior to the execution of the search warrant.

40. The money found and seized totaled $123,880 and constitutes the Defendant Property.

41. Soto was born in Mexico and was in the United States illegally.

42. On June 2, 2022, Soto was charged by Complaint in the U.S. District Court for the Southern District of Iowa with possession with the intent to distribute a controlled substance (Case No. 4:22-mj-372, R. Doc. 1). He was arrested on those charges that day and brought into federal custody.

43. On June 14, 2022, Echeverria and Soto were charged in a multi-count indictment in the U.S. District Court for the Southern District of Iowa, and Soto was specifically charged with conspiracy to distribute methamphetamine, conspiracy to distribute cocaine, and possession with the intent to deliver cocaine (Case No. 4:22-CR-00077, R. Doc. 17, 18).

44. On June 16, 2022, the Court entered an Order Setting Conditions of Release for Soto, which, among other things, required him to live in the Des Moines area with a specifically designated third party custodian and to be under the supervision of a U.S. Probation Officer. Soto agreed to the conditions of release. (Case No. 4:22-CR-00077, R. Doc. 27, 28).

45. On January 23, 2023, Soto's counsel filed a motion to remove Soto's case from the docket because he had absconded from supervision and his whereabouts were unknown. (Case No. 4:22-CR-00077, R. Doc. 62). Defense counsel had no contact with Soto since he was released. The motion was granted on January 25, 2023. (Case No. 4:22-CR-00077, R. Doc. 64).

46. Soto remains a fugitive.

47. Echeverria pled guilty to conspiracy to distribute methamphetamine and was sentenced on September 1, 2023, to eighty-four (84) months imprisonment.

## V. COUNT ONE
## (FORFEITURE UNDER 21 U.S.C. § 881(a)(6))

48. The United States repeats and realleges each and every allegation set forth above.

49. The United States has reason to believe the Defendant Property constitutes moneys or other things of value furnished or intended to be furnished in exchange for a controlled substance, and/or were used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841, § 843, and § 846 et seq.

50. As a result of the foregoing, the Defendant Property is liable to forfeiture to the United States for its use in accordance with 21 U.S.C. § 881(a)(6).

## VI. CONCLUSION

WHEREFORE, the United States respectfully requests that the Court issue a warrant and summons for the arrest and seizure of the Defendant Property; that notice of this action be given to all persons known or thought to have an interest in or right against the property, that the Defendant Property be forfeited to the United States, and that it be awarded its costs and disbursements in this action, and such other and further relief as the Court deems proper and just under the facts and applicable law.

Respectfully submitted,

Richard D. Westphal,

United States Attorney

By: */s/Craig Peyton Gaumer*
Craig Peyton Gaumer
Assistant United States Attorney
U. S. Courthouse Annex,
Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: craig.gaumer@usdoj.gov

## VERIFICATION

I, Nicholas Aeschliman, hereby verify and declare under penalty of perjury that I am a Special Agent with the Drug Enforcement Administration (DEA), and that I have read the foregoing Verified Complaint in Rem, *United States v. Approximately $123,880 in U.S. Currency* and know the contents thereof and the matters contained in the Verified Complaint are true to my own knowledge, except for those matters not within my own personal knowledge and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds for my belief are the official files and records of the Drug Enforcement Administration and information provided to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent with the Drug Enforcement Administration.

Dated: March 7th, 2024.

*Nicholas Aeschliman*
_____
Nicholas Aeschliman
DEA Special Agent